UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME WESTFIELD DEWALD #463078,

                 Petitioner,

v.

GENE WRIGGLESWORTH,

                  Respondent.

_____/

CASE NO. 1:08-CV-906
HONORABLE PAUL L. MALONEY
UNITED STATES DISTRICT JUDGE
HONORABLE JOSEPH G. SCOVILLE
UNITED STATES MAGISTRATE JUDGE

JEROME WESTFIELD DEWALD #463078
C/o Lansing Parole Office
5341 S. Pennsylvania Ave., Suite A
Lansing, MI 48913

MICHAEL A. COX
ATTORNEY GENERAL

Andrew L. Shirvell (P70472)
Assistant Attorney General
Attorney for Respondent
Appellate Division
P.O. Box 30217
Lansing, MI 48909
(517) 373-4875

### RESPONDENT'S ANSWER IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS

### Relevant Facts and Procedural History

      Following a jury trial in Ingham County Circuit Court, Petitioner was convicted on June 27, 2003 of one count of obtaining money by false pretenses ($1,000 or more, but less than $20,000),[1] one count of obtaining money by false pretenses (less than $200),[2] two counts of common-law fraud,[3] and two counts of larceny by conversion ($20,000 or more).[4]  Petitioner was originally sentenced on September 3, 2003.  However, after Petitioner filed a motion for re-

---

[1] Mich. Comp. Laws § 750.218(4)(a).
[2] Mich. Comp. Laws § 750.218(2).
[3] Mich. Comp. Laws § 750.280.
[4] Mich. Comp. Laws § 750.362.

sentencing, Petitioner was re-sentenced on October 15, 2003 due to a calculation error

concerning Petitioner's sentencing score under the Michigan Sentencing Guidelines.  Petitioner

was re-sentenced to concurrent terms of 16-to-60 months' imprisonment on the obtaining-money-

by-false-pretenses-($1,000-or-more,-but-less-than-$20,000) conviction, 90 days in jail on the

obtaining-money-by-false-pretenses-(less-than-$200) conviction, and 23-to-120 months'

imprisonment on the remaining convictions.

> Respondent adopts the following statement of facts set forth by the Michigan Court of

Appeals[5]:

> > Defendant's convictions stem from his operation of two political action
> > committees (PACs) during the 2000 election campaign and recount. Defendant
> > was the chief of staff of both Friends for a Democratic White House (Friends) and
> > Swing States for a GOP White House (Swing States). Defendant also incorporated
> > PAC Services, with the purpose of providing services to the PACs defendant had
> > formed. Defendant solicited contributions through mailings. A contention at trial
> > was that defendant's mailing lists were stolen from the Federal Election
> > Commission (FEC) disclosure statements of the 2000 presidential campaigns of
> > both Al Gore and George W. Bush. These statements list the contributors to each
> > campaign and appear on the FEC website, along with a warning that the lists are
> > for informational purposes only and may not be used for commercial or
> > solicitation purposes.

> > Defendant's PACs collected about $700,000 in contributions. Three
> > victims of defendant's solicitation letters testified at trial. All testified that the
> > solicitation letters they received implied an affiliation with either the Bush
> > campaign or the Gore campaign. They also testified that they donated to the PAC
> > that solicited them because the letter led them to believe that their contributions
> > would go to either the Bush campaign or the Gore campaign. They also testified
> > that they would not have given money to the PAC if they had known that the
> > money was not going to either the Bush campaign or the Gore campaign.
> > Defendant's PACs did give money to Democratic and Republican causes, but
> > checks they attempted to give to the Republican National Committee and the Gore
> > campaign were returned, i.e., those entities refused to accept the donations.

> Petitioner first challenged his June 2003 convictions by filing a claim of appeal as of

right with the Michigan Court of Appeals.  In May 2004, Petitioner filed, via counsel, a motion

---

[5] *People v. Dewald*, 267 Mich. App. 365, 369-370 (2005).

for new trial with the Ingham County Circuit Court.  Following a hearing on June 16, 2004, the

Circuit Court denied Petitioner's motion for new trial.  In September 2004, Petitioner, through

counsel, filed a Brief on Appeal with the Court of Appeals, raising the following six issues:

> I.    There is insufficient evidence to convict [Petitioner] of false pretenses, common law fraud, or larceny by conversion.  These convictions are therefore in violation of his state and federal constitutional rights to due process of law.
>
> II.   [Petitioner's] convictions for false pretenses, common law fraud, and larceny by conversion all stem from activity involving federal campaign finance.  Since this field is covered by a federal statute, which preempts state law, his convictions must be vacated.
>
> III.  The trial court denied [Petitioner] his constitutional right to present a defense by precluding him from presenting his expert witness.
>
> IV.   [Petitioner's] state and federal constitutional due process rights to a fair trial were violated by the court impermissibly allowing the use of factual and legal conclusions throughout the trial.
>
> V.    The restitution amount ordered by the court represents an arbitrary abuse of discretion.
>
> VI.   [Petitioner] is entitled to re-sentencing because judicial fact-finding increased his authorized maximum sentence from a determinate jail term to a prison sentence in violation of his constitutional right to a jury trial.

In December 2004, the People submitted a Brief on Appeal.

In March 2005, Petitioner filed a pro per Supplemental Brief on Appeal, in which he

raised the following eight additional issues:

> I.    The two convictions on false pretenses and the two convictions on common law fraud must be vacated because the context-based standard used to convict [Petitioner] for misrepresenting his affiliation infringes his 1st Amendment right to political advocacy.
>
> II.   The two convictions on common law fraud must be vacated because the Michigan statute on common law fraud is unconstitutionally vague on its face.
>
> III.  The two convictions on larceny by conversion must be vacated because the charges are vague.

IV.     Judicial fact-finding increased [Petitioner's] restitution from $1,300 to $708,188 in violation of his constitutional right to a jury trial.

V.      The state prosecuted [Petitioner] vindictively.

VI.     Restitution ordered is excessive, violating [Petitioner's] double jeopardy protection.

VII.    [Petitioner] was denied the right to a fair trial because counts I-IV should have been severed from counts V and VI.

VIII.   [Petitioner] was improperly sentenced.

On May 12, 2005, the Michigan Court of Appeals issued an unpublished per curiam opinion affirming Petitioner's convictions.[6]  On July 14, 2005, the Court of Appeals approved their May 12, 2005 opinion for publication.[7]

In July 2005, Petitioner filed, via counsel, an application for leave to appeal with the Michigan Supreme Court, appearing to raise the same fourteen issues he previously presented to the Court of Appeals.  On August 29, 2006, the Michigan Supreme Court issued an order denying Petitioner's application for leave to appeal because it was not persuaded that the questions presented should be reviewed.[8]

In July 2007, Petitioner, having obtained new counsel, filed a motion for relief from judgment with the Ingham County Circuit Court under M.C.R. 6.508(D), in which he raised the following sole issue:

I.      The presentation of evidence concerning the disbursement of funds by the two PACs amounted to a violation of the First Amendment.

---

[6] *People v. Dewald*, Michigan Court of Appeals No. 251804 (2005).
[7] *People v. Dewald*, 267 Mich. App. 365 (2005).
[8] *People v. Dewald*, Michigan Supreme Court No. 129032 (2006).

On July 31, 2007, the Ingham County Circuit Court issued an order denying Petitioner's motion for relief from judgment.[9]

In August 2007, Petitioner, again through counsel, filed with the Michigan Court of Appeals an application for leave to appeal the Circuit Court's denial of his motion for relief from judgment.  On December 3, 2007, the Michigan Court of Appeals issued an order denying Petitioner's application for leave to appeal because Petitioner had "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)."[10]  In January 2008, Petitioner filed, via counsel, an application for leave to appeal with the Michigan Supreme Court.  On June 23, 2008, the Michigan Supreme Court issued an order denying Petitioner's application for leave to appeal because Petitioner had "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)."[11]

In September 2008, Petitioner, pursuant to 28 U.S.C. § 2254, filed a habeas petition and brief through counsel.  He raises the following four claims in his brief:

I.      Petitioner's convictions for false pretenses, common law fraud, and larceny by conversion all stem from activity involving federal campaign finance.  Since this field is covered by a federal statute, which preempts state law, his convictions must be vacated.

II.     Petitioner's convictions of false pretenses and common law fraud must be vacated because the context-based standard used to convict Petitioner for misrepresenting his affiliation infringes upon his First Amendment rights to freedom of association and to political advocacy.

III.    There was insufficient evidence to convict Petitioner of false pretenses, common law fraud, or larceny by conversion, and as such, these convictions are in violation of Petitioner's right to due process of law.

IV.     Petitioner was deprived of his due process right to a fundamentally fair trial and his due process right to present a defense where the trial court allowed the

---

[9] *People v. Dewald*, Ingham County Circuit Court No. 02-1185-FH (2007).

[10] *People v. Dewald*, Michigan Court of Appeals No. 280034 (2007).

[11] *People v. Dewald*, Michigan Supreme Court No. 135709 (2008).

prosecution to introduce improper expert testimony involving legal conclusion[s] and improper conclusions as to the ultimate facts, and where the trial court precluded Petitioner from presenting material, expert defense evidence.

Respondent now answers the petition and requests that this Court deny habeas relief for the reasons below.

Petitioner's third habeas claim is without merit because, viewing all of the evidence in a light most favorable to the prosecution, the specific testimony and evidence presented at trial sufficiently established that a reasonable trier of fact could find beyond a reasonable doubt Petitioner guilty of obtaining money by false pretenses, common-law fraud, and larceny by conversion.  The record supports the state court adjudications and Petitioner has failed to establish that the state court adjudications of his third habeas claim were either contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent, or an unreasonable determination of the facts.  Accordingly, this Court should deny Petitioner relief on his third habeas claim.

Petitioner's first habeas claim, in which he alleges that his state convictions were obtained in violation of federal campaign finance law, is without merit because the state's prosecution of Petitioner was not preempted, or prohibited, by federal law.  The state court adjudications of this claim were neither contrary to, nor an unreasonable application of, clearly established United States Supreme Court precedent, or an unreasonable determination of the facts.  Therefore, this Court should also deny Petitioner relief on his first habeas claim.

This Court should likewise deny Petitioner relief on his second habeas claim because it is either not cognizable upon federal habeas review, or because it is otherwise without merit.

Finally, the first-half of Petitioner's fourth habeas claim is procedurally defaulted as a matter of law, and such a default cannot be excused, while the second-half of Petitioner's fourth

6

habeas claim is without merit because the trial court reasonably restricted Petitioner's presentation of the testimony in question and did not violate his due-process rights.  Therefore, this Court should deny Petitioner relief on his fourth habeas claim as well.

In sum, this Court should deny Petitioner relief on all four of his habeas claims. Additionally, Respondent opposes any and all requests for discovery, evidentiary hearings, bond, oral argument, or any other relief.

## **Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) altered the standard of review that federal courts must apply when reviewing applications for a writ of habeas corpus.  The AEDPA applies to all habeas petitions filed after the effective date of the act, April 24, 1996.  Because Petitioner's application was filed after April 24, 1996, the provisions of the AEDPA, including the amended standard, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review that a federal court must utilize when reviewing applications for a writ of habeas corpus:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under 28 U.S.C. § 2254(d)(1), the writ may issue only if one of two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application . . . of clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the

correct governing principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case.[12]  As the court in *Williams v. Taylor* stated[13]:

> [I]n § 2254(d)(1), Congress specifically used the word "unreasonable," and not a term like "erroneous" or "incorrect."  Under § 2254(d)(2)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly.  Rather, that application must also be unreasonable.

Even prior to the enactment of the AEDPA, the Supreme Court stated that a "federal habeas court, should, of course, give great weight to the considered conclusions of a coequal state judiciary."[14]  The Supreme Court has warned the federal courts against too readily granting habeas relief simply because it disagrees with the state court's decision.  In *Miller-El v. Cockrell*, the Supreme Court stated:  "A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system."[15]  In *Woodford v. Visciotti*, the Supreme Court stated that 28 U.S.C. § 2254(d) imposes a highly deferential standard for evaluating state court rulings on habeas review, and "demands that state court decisions be given the benefit of the doubt."[16]  The Supreme Court further stated that a "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law."[17]

---

[12] *Williams v. Taylor*, 529 U.S. 362 (2000).

[13] *Williams*, 529 U.S. at 411.

[14] *Miller v. Fenton*, 474 U.S. 104, 112 (1985).

[15] *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[16] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

[17] *Woodford*, 537 U.S. at 24.

<u>Argument</u>

I.     **Petitioner's third habeas claim alleging insufficient evidence upon which a trier of fact could convict him is without merit.  The state court adjudications of this claim were neither contrary to, nor an unreasonable application of, clearly established United States Supreme Court precedent, or an unreasonable determination of the facts.**

In his third habeas claim, Petitioner alleges that there was insufficient evidence to support

his convictions.

A.     Obtaining money by false pretenses.

Petitioner first asserts that there was insufficient evidence to support his false-pretenses

convictions.  Petitioner raised this allegation on direct appeal to the Michigan Court of Appeals,

but that court rejected it[18]:

> Defendant first argues that there was insufficient evidence to sustain his convictions. We disagree. The standard of review for sufficiency of the evidence claims in criminal cases is "whether the evidence, viewed in a light most favorable to the people, would warrant a reasonable juror in finding" that all the elements of the crime were proven beyond a reasonable doubt. A reviewing court should not interfere with the jury's role in determining credibility of witnesses and weighing the evidence. The prosecution does not have to disprove the defendant's theory of innocence. Rather, the prosecution need only prove the elements of the crime beyond a reasonable doubt. Additionally, "[i]t is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences."
>
> In order to prove false pretenses, the prosecution must show (1) a false representation concerning an existing fact, (2) knowledge by the defendant that the representation is false, (3) use of the representation with an intent to deceive, and (4) detrimental reliance by the victim. We find that the prosecution presented sufficient evidence on each element to sustain defendant's convictions for false pretenses. Defendant, through the solicitation letters, represented that he was affiliated with either the Bush campaign or the Gore campaign and the language in his letters implied that he knew the individuals to be past donors to the campaign. Defendant used the candidates' names in his solicitation letters. Defendant's later letters represented that he was affiliated with the recount effort of each campaign after the election. These representations were not true because

---

[18] *People v. Dewald*, 267 Mich. App. 365, 370-373 (2005) (internal citations & footnotes omitted).

defendant's PACs were not affiliated with either party or its recount effort. It was also undisputed that defendant knew that these representations were false, because he knew that he was not affiliated with either political party's candidate for president.

There was also evidence that defendant used the representations with an intent to deceive. A defendant's intent to deceive can be inferred from the evidence, and minimal circumstantial evidence is sufficient to prove a defendant's intent. There was evidence presented at the trial that defendant used the candidates' names in his solicitation letters, knowing that this use was illegal. Defendant informed an investigator that he learned how to operate a PAC by reading the FEC guide. This guide clearly stated that it was not proper for a PAC to use a candidate's name in its solicitations. There was also testimony from the counsel for the Republican National Committee that he sent defendant a cease-and-desist letter, informing him of his illegal and misleading use of Bush's name in his solicitations. Evidence indicated that defendant mailed additional letters using Bush's name after this letter. The circumstantial evidence presented at trial supported the prosecution's theory that defendant used misrepresentations that he was affiliated with each political party with an intent to deceive potential donors into giving money to his PACs.

There was also detrimental reliance by the victims. Each victim testified that he or she donated money to one of defendant's PACs. The victims also testified that they believed that the money was going to either the Bush campaign or the Gore campaign and that they relied on this in sending the donations. The victims also testified that they would not have sent in the donations if they had known that the money was not going to the respective campaigns. In addition, a victim testified that she sent a $200 donation to Friends and that her check was cashed. Another victim testified that he sent a check for $1,000 to Friends because he received the letter in the mail that asked him to assist Gore in his election campaign. And another victim testified that he wrote a check for $100 to Swing States and that check was ultimately cashed.

For these reasons, we find that there was sufficient evidence for the jury to find defendant guilty of false pretenses, $1,000 or more but less than $20,000, and false pretenses, less than $200.

Clearly established United States Supreme Court law holds that the due process clause

protects a criminal defendant from being convicted of a crime without proof beyond a reasonable

doubt of every element of an offense.[19]  In *Scott v. Elo*, the U.S. Sixth Circuit Court of Appeals

stated the constitutional standard regarding sufficiency of the evidence[20]:

> In *Jackson v. Virginia*, [443 U.S. 307 (1979)] the Court held that a
> petitioner is not entitled to habeas corpus relief based on insufficient evidence
> where, after viewing the evidence in the light most favorable to the prosecution,
> *any* rational trier of fact could have found the essential elements of the crime
> beyond a reasonable doubt.  This standard applies whether the evidence of guilt
> was direct or circumstantial.

In this case, viewing all of the evidence in a light most favorable to the prosecution, the

specific testimony and evidence presented at trial sufficiently established that a reasonable trier

of fact could find beyond a reasonable doubt Petitioner guilty of obtaining money by false

pretenses.  Petitioner maintains, however, that "absent a natural distaste for [Petitioner's] decision

to simultaneously fundraise for both political parties" the jury should not have convicted him

(Petitioner's Habeas Brief, September 2008, p. 48).  But Petitioner's argument is without merit.

With respect to demonstrating that Petitioner made a false representation concerning an

existing fact, it is true that the solicitation letters did not explicitly state that they came from

either the Bush or Gore presidential campaigns, or from the Republican or Democratic parties

(See Petitioner's Habeas Brief, September 2008, p. 51).  But, as the People successfully argued

on appeal, there was plenty of circumstantial evidence that indicated Petitioner deliberately

created a false impression that there was an official affiliation between his respective PACs and

the Bush and Gore campaigns:

> [Petitioner] carefully crafted the Committee solicitation letters to create a
> false implication of affiliation with Bush and Gore (PE 5, PE 6, and PE 25-30).
> This affiliation is established through the language and the presentation
> (packaging) of the solicitations.  The letters include:

---

[19] See *In re Winship*, 397 U.S. 358 (1970).
[20] *Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002) (internal citations omitted).

> We are calling on a select few of the most generous supporters of
> George W. Bush in these last days of the 2000 campaign to help
> raise a final $1 million before October 26 to capture the electoral
> votes in these critical swing states:  Florida, Michigan,
> Pennsylvania, Missouri, Arkansas and Washington.
>
> Regardless of your previous contributions, the Swing States for a
> GOP White House PAC can accept your additional individual
> contribution from $700 up to a maximum of $5000 to help make
> sure George W. Bush is elected to the White House in 2000(PE 5
> and PE 25).
>
> This language is included in an overall package which appears to have
> come from, and requested that donations be returned to, Pennsylvania Avenue.
> The solicitation offers entry to an "Inaugural Ball Gala Event." [footnote # 10].
> The solicitation letter made the false representation that [Petitioner] was affiliated
> with Bush and Gore.
>
> [Footnote #10: There was never an "Inaugural Ball Gala Event" (TT 164-165).
> The fact that defendant did acquire tickets to a Presidential Ball is not absolving
> of its part in creating the erroneous affect of affiliation with Bush and Gore (TT
> 168; DE A).  It is merely cover for the broader scheme].
>
> [People's Brief on Appeal, December 2004, p. 13].

Concerning the second element, Petitioner's knowledge that the representations he made
were false, "This is of course, evident from review of these solicitation letters drafted by
someone who had no connection to either Bush or Gore" (People's Brief on Appeal, December
2004, p. 13).

Regarding the third element, Petitioner intended to deceive the donors precisely because
"these donors were being solicited as Bush and Gore donors.  The value of the lists would be
greatly diminished if used for a different purpose or to solicit on behalf of a different candidate
or committee (TT 430-431).  It is the deceptive false affiliation that makes the Bush and Gore
donor information valuable" (People's Brief on Appeal, December 2004, p. 14).

Finally, there was overwhelming evidence presented as to the fourth element, i.e. that the
victim-donors relied on Petitioner's misrepresentations to their detriment:

[E]ach victim testified that they had made their contribution because they believed they were being solicited by Bush, Gore, or a closely affiliated committee.

Mr. Tringali testified, "I assumed it was from the Bush campaign. Had I not, I wouldn't have sent it" (TT 453). Mr. Miller testified, "I assumed that I had been identified as a Gore supporter because I had previously contributed to the Gore campaign"(TT 481). "I think I got that from on – a select few of the most generous individual supporters. I mean, how would he know that I had written a check once before unless he had access to that information" (TT 483).

Ms. Westover responded to the November solicitation for funds to pay legal expenses. This appeal included the following language implying affiliation with Gore (in this case):

"It was a hard-fought battle, but with your support the Presidency was captured for the Democratic party and Al Gore this year. Now our opponents want to use the legal system to steal the election.

Once again we are calling on a select few of the most generous individual supporters of Al Gore to help raise $3 million before December 1 to protect our hard-won victory."

Ms. Westover relied on the statements in this letter and sent Friends $200 to defray legal expenses. No money was sent by Friends to the Gore recount fund (TT 399) or contributed to the Gore General Election Legal and Accounting Compliance Fund (TT 394-396; PE 31).

[People's Brief on Appeal, December 2004, p. 14].

Accordingly, the testimony related above belies Petitioner's assertion that "[t]he contributors to the PACs did not suffer any sort of loss attributable to [Petitioner]" (Petitioner's Habeas Brief, September 2008, p. 56).

Thus, contrary to Petitioner's contentions, the prosecution met its burden with respect to each of the four elements vis-à-vis obtaining money by false pretenses – for all of the reasons successfully argued by the People on direct appeal and for all the reasons succinctly articulated by the Court of Appeals in its review of the matter.

B.     Common law fraud.

Petitioner next asserts that there was insufficient evidence to support his common-law-fraud convictions. Petitioner raised this allegation on direct appeal to the Michigan Court of Appeals, but that court rejected it[21]:

> Defendant also argues that there was insufficient evidence to find him guilty of two counts of common-law fraud because the Bush and Gore campaigns did not suffer any loss. We disagree. MCL 750.280 defines the crime as the commission "of any gross fraud or cheat at common law . . . ." Defendant's convictions for common-law fraud were based on the losses suffered by the Bush and Gore campaigns as a result of defendant's solicitation of Bush and Gore donors. Testimony at trial showed that defendant collected more than $700,000 in donations using the campaign lists of Bush and Gore contributors. There was expert testimony at trial that the repeated use of these lists decreased their value, resulting in the campaigns suffering a loss. There was also testimony from the victims that they believed their donations were going to the Bush campaign or the Gore campaign and that they would not have given to defendant's PACs if they had known that the money was not going to the respective campaign. It can be inferred from this that the campaigns suffered losses because the victims wanted their donations to go to the campaigns, but instead the money went where defendant saw fit. As such, we find that there was sufficient evidence to support defendant's convictions for common-law fraud.

Here, on habeas review, Petitioner continues to allege that the prosecution did not meet its burden with respect to demonstrating that the Bush and Gore campaigns suffered any losses. But, in this case, viewing all of the evidence in a light most favorable to the prosecution, the specific testimony and evidence presented at trial sufficiently established that a reasonable trier of fact could find beyond a reasonable doubt that the respective presidential campaigns of George Bush and Al Gore suffered significant losses for purposes of common-law fraud:

> [E]xpert testimony at trial explained that the value of these donor lists is greatest when a specific message is used.
>
> > If the appeal is well written - - and this looks like a fairly official looking appeal (referring to PE 31), I mean, at first glance here. If the appeal is fairly well written and ties directly into a cause for

---

[21] *People v. Dewald*, 267 Mich. App. 365, 373-374 (2005).

which the person has previously donated, they are likely to donate again.  They are much more likely to donate then almost any list I can think of of names (TT 434-435).

The intentionally misleading language in solicitation letters, which imply affiliation with the each political party's efforts to elect their candidate, is targeted using the stolen list.  The theft of the list, however, is not the totality of the loss.  Again, expert trial testimony explained that mailing a solicitation letter to a sample of all U.S. citizens (or subscribers of Time magazine) would not be very profitable (TT435-436).  The low response rate and small donation size are not likely to cover costs.  In general terms, the fact that an individual has previously contributed to **a campaign** is a strong plus; the fact that an individual has previously contributed to **a Democratic campaign** is a strong plus; the fact that an individual has contributed to **a Democratic presidential campaign** is a strong plus; and the fact that an individual has contributed to **a particular campaign** (as opposed to a Democratic primary rival) is the best target (TT 436-437).

In other words, the potential gain for [Petitioner], and, therefore, loss to the campaigns, is dramatically increased by appealing to the Bush donors in Bush's name and to the Gore donor's in Gore's name.

[Petitioner] did steal assets of Bush and Gore.  The assets stolen had a value of over $20,000 (TT 428-429) . . . He then used those stolen assets to cheat these campaigns out of hundreds of thousands of dollars (TT 226).

[People's Brief on Appeal, December 2004, p. 16 (emphasis original)].

Thus, the prosecution met its burden with respect to demonstrating that the Bush and Gore campaigns suffered losses for purposes of common-law fraud – for all of the reasons successfully argued by the People on direct appeal and for all the reasons succinctly articulated by the Court of Appeals in its review of the matter.

C.    Larceny by conversion

Petitioner also argues that there was insufficient evidence to support his larceny-by-conversion convictions.  Petitioner raised this allegation on direct appeal to the Michigan Court of Appeals, but that court rejected it[22]:

---

[22] *People v. Dewald*, 267 Mich. App. 365, 374 (2005) (internal citations omitted).

Defendant also argues that there was insufficient evidence to support his convictions of larceny by conversion because there was insufficient evidence that defendant intended to defraud anyone. We disagree. An element of larceny by conversion is that the defendant must, at the time the property is converted, intend to defraud or cheat the owner of the property. There was evidence presented at the trial that supported the theory that defendant illegally used each campaign's FEC disclosure of contributors. Swing States' mailing list contained fictitious names used by the Bush campaign in its FEC disclosure, and Friends' mailing list contained errors that matched errors made in the Gore campaign's FEC filings. The FEC guide and website both contained warnings that these lists were not to be used for solicitation purposes. By using the lists for solicitation purposes, defendant defrauded the political parties by soliciting further contributions from past donors, while implying that his PACs were affiliated with the campaigns. This evidence of an intent to defraud was sufficient to support the jury verdict.

Here, Petitioner only contests whether the prosecution met its burden it proving that Petitioner specifically intended to defraud the Bush and Gore campaigns of their property.  But, in this case, viewing all of the evidence in a light most favorable to the prosecution, the specific testimony and evidence presented at trial sufficiently established that a reasonable trier of fact could find beyond a reasonable doubt that Petitioner intended to defraud the respective presidential campaigns of George Bush and Al Gore of their property:

[Petitioner] knew that the names and addresses solicited by his Committees were from the Gore and Bush FEC disclosures.  This fact is evidenced by the specifically targeted messages used in the solicitation letters.  There is no other explanation for beginning a solicitation letter with:  "[w]e are calling on a select few of the most generous individual supporters of George W. Bush / Al Gore..." (PE 5 and PE 25).

*** 

[Petitioner's] knowledge of his improper use of the Gore and Bush lists is further demonstrated by his attempts to cover up their source.  Trial evidence supports this conclusion as follows:

October 6, 2000        $5,000 check from Swing States to Loudmila V. Volkova
                       for "Mailing List." (PE 1).  Computerized check register for
                       this Swing States account describes this payment as
                       "Wages" for "Mailing list preparation."(PE 41).

17

| | |
|---|---|
| December 8, 2000 | An investigative subpoena served requesting "any and all documents relating to the entities in this alleged fraud. These entities include, but may not be limited to, Friends for a Democratic White House; Swing States for a GOP White House; Swing States PAC; Swing PAC and PAC Services, Inc." (TT 207; PE 12). |
| December 8, 2000 | [Petitioner] told investigators the he purchased the mailing list used by the Committees but refused to say from whom (TT 209-210). |
| December 11, 2000 | Swing States filed a disclosure statement with the FEC, which included a $5,000 payment to "American Political Lists" with the notation "Information Requested" in place of the required mailing address and zip code [footnote #5]. This payment was made on October 6, 2000.  The stated purpose of this disbursement was "MAILING LIST" (PE 9A). |
| December 21, 2000 | [Petitioner] delivers a box of documents including, what was described as, "Mailing lists" (PE 13) [footnote #6]. |
| January 18, 2001 | The People follow up on [Petitioner's] December 21, 2000 response to the December 8, 2000 investigative subpoena, writing, "There are documents not included that must exist (e.g. there are no solicitation letters in the material). Additionally, the material provided does not include documentation to support disclosures made in Federal Election Commission filings (e.g. documents supporting payment to American Political Lists)."  (TT 215-217; PE 14). |
| February 26, 2001 | [Petitioner] responds: "There are no other documents to support disclosures made in Federal Election Commission filings."  (TT 216; PE 17). |
| March 29, 2001 | Swing States filed an amended disclosure statement with the FEC, now indicating that the October 6, 2000 payment of $5,000 was to: |

> American Political Lists
> L. Volkova
> 6150 Cobblers Court #110
> East Lansing, MI  48823

The transmittal letter for this amended disclosure notes, "[t]he payment to 'American Political Lists' % L. Volkova

is an amendment, as that the last report I did not have an address, only a payee."

Loudmila V. Volkova is [Petitioner's] ex-wife (TT 220-221; PE 18).  The address, 6150 Cobblers Court #110, East Lansing, is [Petitioner's] home address (TT 221).

[Footnote #5: S/A Donovan Motley testified that he attempted to locate a company named American Political Lists, consulting both local and national sources, without success (TT p 220, 291-294)].

[Footnote #6: This mailing list is just under 1000 pages, double-sided, single-spaced, and printed in 8-point font].

[People's Brief on Appeal, December 2004, pp. 17; 6-7].

For all of the reasons successfully argued by the People on direct appeal and for all the reasons succinctly articulated by the Court of Appeals in its review of the matter, the prosecution met its burden with respect to showing that Petitioner specifically intended to defraud the Bush and Gore campaigns of their property for purposes of larceny by conversion.

In sum, the prosecution met its evidentiary burden in this case.  The record supports the state court adjudications and Petitioner has failed to establish that the state court adjudications of his third habeas claim were either contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent, or an unreasonable determination of the facts.  Accordingly, this Court should deny Petitioner relief on his third habeas claim.

**II.    Petitioner's first habeas claim alleging that his state convictions were obtained in violation of federal campaign finance law is without merit.  The state court adjudications of this claim were neither contrary to, nor an unreasonable application of, clearly established United States Supreme Court precedent, or an unreasonable determination of the facts.**

In his first habeas claim, Petitioner alleges that he should never have been charged with obtaining money by false pretenses, common-law fraud, or larceny by conversion because these crimes under Michigan law are explicitly preempted by the Federal Election Campaign Act (FECA) because "Congress intended FECA to occupy the entire field of federal campaign finance" (Petitioner's Habeas Brief, September 2008, p. 18).  Specifically, Petitioner maintains that, because the charges involved campaign finance matters, the People's prosecution stemmed from alleged violations of federal election law under 2 U.S.C. § 438(a)(4), rather than from actual violations of state law (Petitioner's Habeas Brief, September 2008, pp. 14-15).  Petitioner raised this claim on direct appeal to the Michigan Court of Appeals, but that court rejected it[23]:

> Defendant next argues that his convictions should be reversed because they are preempted by federal law. We disagree. Determination of whether state law is preempted by federal law is an issue of statutory construction and an issue of law that is reviewed de novo.  Federal law may preempt state law in three general circumstances: (1) when Congress expressly states its intent to preempt state law, (2) when state law regulates conduct in an area that Congress intended to occupy exclusively, or (3) when the state law actually conflicts with the federal law. There is a presumption against preemption, and courts will only find a state law preempted when the intent of Congress is clear and unequivocal. When a state law concerns a legitimate exercise of a state's police powers, a party claiming preemption must meet a heavy burden to establish a Supremacy Clause violation. The courts must balance the federal interest against the state's traditional police-powers interest in prosecuting crimes.
>
> Congress stated that the provisions of the Federal Election Campaign Act (FECA) "supersede and preempt any provision of State law with respect to election to Federal office." 2 USC 453. However, federal courts have held that "'courts have given section 453 a narrow preemptive effect in light of its legislative history.'" *Karl Rove & Co v Thornburgh*, 39 F.3d 1273, 1280 (CA 5, 1994), quoting *Stern v General Electric Co*, 924 F.2d 472, 475 n 3 (CA 2, 1991).

---

[23] *People v. Dewald*, 267 Mich. App. 365, 374-376 (2005) (some internal citations omitted).

Additionally, federal courts have held that Congress did not intend the criminal sanctions of the FECA to be a substitute for all other possible criminal sanctions. *United States v Trie*, 21 F. Supp. 2d 7, 19 (D DC, 1998) citing *United States v Hopkins*, 916 F.2d 207, 218 (CA 5, 1990) *United States v Curran*, 20 F.3d 560, 566 (CA 3, 1994)and *United States v Oakar*, 924 F. Supp. 232, 245 (D DC, 1996), aff'd in part and rev'd in part on other grounds, 324 U.S. App DC 104; 111 F.3d 146 (1997). Defendant was charged with and convicted of Michigan state-law crimes. These crimes are not specifically preempted by 2 USC 453. Defendant does not cite another portion of the federal statute that specifically preempts a state from pursuing criminal charges when the crimes are brought against a factual background that involves an election. There is also no conflict between state and federal law in this area. Defendant's convictions for the crimes at issue were not barred by the FECA. Thus, we reject defendant's federal-preemption argument.

Here, Petitioner has failed to demonstrate that state court adjudications of his first habeas claim were either contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent.  Petitioner cites to neither U.S. Supreme Court precedent nor precedent from the U.S. Sixth Circuit Court of Appeals that supports his contention that federal campaign finance / election law prohibits the State of Michigan from prosecuting him for violating its laws, even if the impetus for those crimes was a federal presidential election.

Moreover, Petitioner's complaint that he was really prosecuted for federal crimes by the State of Michigan is inaccurate.  Petitioner specifically complains that the prosecution referenced Federal Election Commission (FEC) rules during closing argument (See Petitioner's Habeas Brief, September 2008, p. 17).  But the prosecution was not asking the jury to find Petitioner guilty based on any alleged violations of the FEC rules.  Rather, the prosecution was summarizing for the jury the evidence that supported its theory that Petitioner had an intent to deceive for purposes of obtaining money by false pretenses, in violation of Michigan law (See TR, June 26, 2003, pp. 543-544).  As the Court of Appeals noted in its decision, "There was evidence presented at the trial that [Petitioner] used the candidates' names in his solicitation letters, knowing that this use was illegal. [Petitioner] informed an investigator that he learned

how to operate a PAC by reading the FEC guide.  This guide clearly stated that it was not proper

for a PAC to use a candidate's name in its solicitations."[24]

     Finally, Petitioner is wrong when he contends, "State, rather than federal, prosecution of

Petitioner's conduct produced draconian results in this case" (Petitioner's Habeas Brief,

September 2008, p. 24).  Specifically, Petitioner argues that he would have been subjected to less

harsh punishment, or lesser penalties, if the federal government had prosecuted him instead of

the State of Michigan.  But Petitioner's argument is belied by the May 2006 FEC General

Counsel's report:

>      Given that the State of Michigan has seized the remaining assets of
> Friends and Swing States, that neither Friends nor Swing States has engaged in
> any significant activity since [Petitioner's] criminal conviction, that [Petitioner]
> has served a prison sentence for his conduct and is subject to a state court order
> requiring him to pay several hundred thousand dollars in restitution, and that the
> state appellate court decision makes it unlikely that [Petitioner's] criminal
> conviction or the connected remedies will be overturned, this Office has
> concluded that the proper ordering of the Commission's priorities and use of its
> resources would be best served by taking no further action other than to send
> letters of admonishment to Friends for a Democratic White House and Jonathon
> Mosier in his official capacity as Treasurer, Swing States for a Conservative
> White House and Marsha McCoy-Pfister in her official capacity as Treasurer, and
> [Petitioner].
>
> [MUR 5155, General Counsel's Report #3 before the FEC, May 2006, p. 3 –
> Attached to Petitioner's Habeas Brief as "Exhibit O"].

     Thus, the only reason that the federal government did not pursue action against Petitioner

was because Petitioner's case was no longer high priority, in light of the fact that Petitioner had

been convicted in state court – not because federal authorities concluded that Petitioner was any

less culpable.  And, more importantly, the above report undermines Petitioner's central

contention in that the FEC's General Counsel recognized that the State of Michigan's criminal

---

[24] *People v. Dewald*, 267 Mich. App. 365, 372 (2005).

prosecution of Petitioner was a legitimate exercise of the state's police powers, which did not

conflict with the FEC's authority to pursue its own remedies for violations of federal law.

In sum, for all the reasons above, Petitioner's first habeas claim alleging that his state

convictions were obtained in violation of federal campaign finance law is without merit.  The

state court adjudications of this claim were neither contrary to, nor an unreasonable application

of, clearly established United States Supreme Court precedent, or an unreasonable determination

of the facts.  Therefore, this Court should deny Petitioner relief on his first habeas claim.

III.    **Petitioner's second habeas claim alleging a violation of his federal constitutional rights is either not cognizable upon federal habeas review, or is otherwise without merit.**

In his second habeas claim, Petitioner alleges that the state statutes under which he was convicted of obtaining money by false pretenses and common-law fraud are unconstitutional because they violate his First Amendment rights, or because they are "vague" or "over-broad."

To the extent that Petitioner challenges his convictions based upon the constitutionality of Michigan's statutory law governing the crimes of obtaining money by false pretenses and common-law fraud, his second habeas claim is not cognizable upon federal habeas review.

A federal habeas court may only grant habeas relief to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States."[25]  Therefore, habeas relief may not be based upon perceived error of state law.[26]

Here, Petitioner alleges that the state laws in question are vague "as to the standards being applied" and "overly broad as to the conduct prescribed" (Petitioner's Habeas Brief, September 2008, p. 32).  These allegations essentially challenge the constitutionality of state criminal statutes, which is not a claim that this federal Court can properly entertain on habeas review.  Therefore, this aspect of Petitioner's second habeas claim is not cognizable.

To the extent that Petitioner alleges a violation of his First Amendment rights, his second habeas claim is without merit.  Petitioner raised this allegation on direct appeal to the Michigan Court of Appeals, but that court rejected it[27]:

> Defendant next argues that his convictions violate his First Amendment rights of free speech and association. We disagree. We review constitutional issues de novo. Both the state and federal constitutions recognize the fundamental

---

[25] 28 U.S.C. § 2241(c)(3); 28 U.S.C. § 2254(a).

[26] See *Gilmore v. Taylor*, 508 U.S. 333 (1993); *Estelle v. McGuire*, 502 U.S. 62 (1991); *Lewis v. Jeffers*, 497 U.S. 764 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982).

[27] *People v. Dewald*, 267 Mich. App. 365, 381 (2005) (internal citations omitted).

rights of free speech and expression and provide great protection for speech in the political arena. However, this protection is not absolute. All the charges that defendant complains impinge on his First Amendment freedoms involve some sort of misrepresentation or fraud. This Court has held that even in the area of political speech, "[k]nowing misrepresentations are not constitutionally protected free speech." Defendant's statements were not protected speech, and therefore defendant's prosecution because of these statements did not run afoul of the First Amendment.

Defendant also argues that his right to freedom of association was violated by his convictions. Although the First Amendment includes a protected freedom of association, defendant was not prosecuted for associating with a political party. Defendant was prosecuted for making false representations that his PACs were affiliated with the presidential campaigns in order to obtain contributions. Therefore, we conclude that defendant's convictions did not abridge his right to freely associate.

Here, again, Petitioner has failed to demonstrate that state court adjudications of this aspect of his second habeas claim were either contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent, or an unreasonable determination of the facts. Petitioner cites to neither U.S. Supreme Court precedent nor precedent from the U.S. Sixth Circuit Court of Appeals that supports his contention that his rights under the First Amendment were violated by the State of Michigan's prosecution of him for violations of Michigan law, even if the impetus for the crimes was a federal presidential election.

Accordingly, for all the reasons above, this Court should deny Petitioner relief on his second habeas claim because it is either not cognizable upon federal habeas review, or because it is otherwise without merit.

IV.    **Petitioner's fourth habeas claim, in which he alleges a violation of his right to present a defense and to a fair trial, is either procedurally defaulted as a matter of law, or is otherwise without merit.**

In the first-half of his fourth habeas claim, Petitioner argues that he was denied his constitutional right to a fair trial because the trial court permitted the "prosecution to introduce improper expert testimony involving legal conclusion[s] and improper conclusions as to ultimate facts" (Petitioner's Habeas Brief, September 2008, p. 68).  Petitioner raised this allegation on direct appeal to the Michigan Court of Appeals, but that court rejected it[28]:

> Defendant next argues that he was denied a fair trial when multiple witnesses testified about factual and legal conclusions. We disagree. Defendant did not preserve this issue before the trial court by objecting to the testimony on the basis that it involved legal or factual conclusions. Therefore, we review this issue for plain error affecting substantial rights.
>
> A witness is not permitted to testify on questions of law because it is the trial judge's responsibility to find and interpret the law. One instance defendant cites was a witness explaining why he drafted a letter to Swing States and what the letter stated. Another instance was a witness reading from the FEC guide that had already been admitted into evidence. Neither instance involved improper testimony in the form of a legal conclusion. Regarding the factual conclusions defendant cites, neither instance involved testimony from a witness on the ultimate issue in the case, defendant's guilt or innocence of the charges. However, even if this testimony did go directly to the ultimate issues, that would not make this testimony objectionable. MRE 704. Additionally, defendant was able to cross-examine each witness concerning the basis of the witness's factual statements, and the jury was free to accept or reject the witness's testimony. Therefore, we conclude that defendant has not established plain error with respect to this issue.

The first-half of Petitioner's fourth habeas claim is procedurally defaulted as a matter of law.  A procedural default occurs when a state procedure bars a petitioner's claim and the state court "clearly and expressly" relied on that bar.[29]  Under Michigan law, failure to make a

---

[28] *People v. Dewald*, 267 Mich. App. 365, 377 (2005) (internal citations omitted).
[29] *Harris v. Reed*, 489 U.S. 255, 263 (1989).

contemporaneous objection serves as an independent and adequate state-law bar.[30]  The United

States Supreme Court has stated that "in all cases in which a state prisoner has defaulted his

federal claims in state court pursuant to an independent and adequate state procedural rule,

federal habeas corpus review of the claims is barred unless the prisoner can demonstrate cause

for the default and actual prejudice as a result of the alleged violation of federal law; or

demonstrate that failure to consider the claims will result in a fundamental miscarriage of

justice."[31]

Here, Petitioner failed to make a contemporaneous objection at trial concerning the

specific allegations that he presents in the first-half of his fourth habeas claim.  Although the

Michigan Court of Appeals reviewed Petitioner's claim for plain error (otherwise known as

"manifest injustice"), such a review does not excuse Petitioner's procedural default.[32]

Consequently, the first-half of Petitioner's fourth habeas claim is procedurally defaulted and this

Court is barred from reviewing it for a violation of habeas corpus.

Petitioner cannot overcome this procedural default because he has failed to establish

cause and prejudice to excuse the default, or demonstrate that failure to consider this claim will

result in a fundamental miscarriage of justice.  Here, Petitioner makes no attempt to establish

cause, i.e. he has not presented an argument that his trial counsel was constitutionally ineffective

for failing to object to the testimony in question on the basis upon which Petitioner now

complains.  Additionally, for all the reasons thoroughly articulated by the Michigan Court of

Appeals in its review for plain error, Petitioner cannot demonstrate that he would be prejudiced

---

[30] See *People v. Callon*, 256 Mich. App. 312, 329 (2003); *People v. Stanaway*, 446 Mich. 643, 687 (1994).
[31] *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006), citing *Coleman v. Thompson*, 501 U.S. 722, 749 (1991).
[32] See *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989).

by this Court's refusal to entertain the first-half of his fourth habeas claim on the merits because the testimony in question was properly admitted.  And, Petitioner has also failed to demonstrate that this Court's refusal to consider this portion of his fourth habeas claim would result in a fundamental miscarriage of justice, since Petitioner is not actually innocent.  As presented in Section I of this Answer's argument, there was overwhelming evidence of Petitioner's guilt of the crimes for which he has been convicted.

As to the second-half of his fourth habeas claim, Petitioner argues that he was denied his constitutional right to present a defense because the trial court prevented Petitioner from calling an "expert" witness in his defense.  Petitioner raised this allegation on direct appeal to the Michigan Court of Appeals, but that court rejected it[33]:

> Defendant next argues that the trial court erred by precluding him from presenting an expert witness at trial. We disagree. This Court reviews a trial court's decision on the admissibility of evidence for an abuse of discretion. "An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling made."
>
> The witness [footnote #2] was to testify about viewing and printing information from a website, tray.com, that also contains the FEC disclosures. The information on that website was in a different form and did not contain the cautionary language against using the information for a commercial purpose. However, the witness viewed the website and made printouts from it in January or February 2001, which was after defendant had mailed out the letters in October and November 2000. Thus, the trial court reasonably determined that this witness's testimony was not relevant and did not abuse its discretion in excluding this evidence.
>
> [Footnote #2: [Petitioner] argues on appeal that the proposed testimony he offered at trial was expert testimony.  However, there was no mention of the fact that this witness was an expert at the trial court level].

---

[33] *People v. Dewald*, 267 Mich. App. 365, 376-377 (2005) (internal citations omitted).

The constitutional right to present a defense is found in both the Sixth Amendment and the due process clause of the Fourteenth Amendment.[34]  Just as it is incontrovertible that a defendant has a right to present a defense, so, too, it is incontrovertible that such a right is not unfettered.[35]  A defendant's right to present relevant evidence is not unlimited and is subject to reasonable restrictions.[36]  As the United States Supreme Court has explained, "In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence."[37]  The reason for this requirement is because states have a weighty interest in the orderly conduct of criminal trials, thereby justifying the imposition and enforcement of firm, although not inflexible, rules relating to the presentation of evidence.[38]

In this case, the trial court did not deprive Petitioner of his constitutional right to present a defense.  Specifically, the trial court's ruling prohibiting Petitioner from calling his witness was neither contrary to, nor an unreasonable application of, clearly established United States Supreme Court precedent.  The trial court did not admit the testimony in question because it would have violated the Michigan Rules of Evidence.[39]  The trial court's ruling, and the Court of Appeals' affirmation of that ruling through its review of Petitioner's claim on the merits, was in keeping with the United States Supreme Court's reasoning in *Taylor v. Illinois*[40]:

> The principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on the right. The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party

---

[34] *Wong v. Money*, 142 F.3d 313 (6th Cir. 1998); *Rock v. Arkansas*, 483 U.S. 44 (1987).
[35] *Allen v. Morris*, 845 F.2d 610, 615 (6th Cir. 1988).
[36] *Wong*, 142 F.3d at 325, citing *United States v. Scheffer*, 523 U.S. 303 (1998).
[37] *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); see also *Scheffer*, 523 U.S. at 308.
[38] *Taylor v. Illinois*, 484 U.S. 400, 411 (1988).
[39] See Michigan Rule of Evidence 402.
[40] *Taylor*, 484 U.S. at 411 (internal citations omitted).

with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case. The trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony . . . The State's interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the identification and presentation of evidence.

Petitioner claims that "this witness's testimony would have shown the jury the possibility that [Petitioner] obtained restricted material through legitimate means, without knowledge of their restrictions, thereby negating his specific intent to commit [larceny by conversion]" (Petitioner's Habeas Brief, September 2008, p. 78).  But, as explained by the Court of Appeals in its decision, the witness would not be offering exculpatory evidence, since he would not be offering testimony about the tray.com website during the timeframe that Petitioner argued he utilized it in order to mail out the fall, 2000 solicitation letters.  Accordingly, Petitioner's allegation that this witness's testimony was crucial to his defense is without merit.

Petitioner has failed to show how the relevant trial court decision, and the Michigan Court of Appeals' review of the matter, violated federal law.  The United States Supreme Court has repeatedly confirmed that criminal defendants do not have a right to admit whatever evidence they wish in support of their theory of the case.  Rather, a criminal defendant's right to present evidence is subject to reasonable restrictions.

Here, the trial court reasonably restricted Petitioner's presentation of the testimony in question.  The trial court's exclusion of such evidence from trial did not deprive Petitioner of his due-process right to present a defense.  Accordingly, the state court adjudications of the second-half of Petitioner's fourth habeas claim were neither contrary to, nor an unreasonable application of, clearly established United States Supreme Court precedent, or an unreasonable determination of the facts.

In sum, the first-half of Petitioner's fourth habeas claim is procedurally defaulted as a matter of law, and such a default cannot be excused, while the second-half of Petitioner's fourth habeas claim is without merit because the trial court reasonably restricted Petitioner's presentation of the testimony in question and did not violate his due-process rights.  Therefore, this Court should deny Petitioner relief on his fourth habeas claim.

## **Conclusion**

For the reasons stated above, the petition should be denied.

                                        Respectfully submitted,
                                        Michael A. Cox
                                        Attorney General


                                        <u>s/Andrew L. Shirvell</u>

                                        Andrew L. Shirvell
                                        Assistant Attorney General
                                        Appellate Division
                                        P.O. Box 30217
                                        Lansing, MI  48909
                                        shirvella@michigan.gov
                                        P70472

Dated:  April 8, 2009
2007021276B/DeWald Answer

**<u>Certificate of Service</u>**

I hereby certify that on April 8, 2009, I electronically filed the foregoing papers with the

Clerk of the Court using the ECF system which will send notification of such filing to the

following:

      HONORABLE PAUL L. MALONEY
      MAGISTRATE JUDGE JOSEPH G. SCOVILLE

and I hereby certify that Meagan R. Touhey has mailed by United States Postal Service the

papers to the following non-ECF participant:

      JEROME WESTFIELD DEWALD #463078
      C/o Lansing Parole Office
      5341 S. Pennsylvania Ave., Suite A
      Lansing, MI 48913

                MICHAEL A. COX
                Attorney General

                <u>s/Andrew L. Shirvell</u>

                Assistant Attorney General
                Appellate Division
                P.O. Box 30217
                Lansing, MI  48909
                shirvella@michigan.gov
                P70472